# KEAVENEY
## LEGAL GROUP

*Client Focused. Integrity Driven.*

*James P. Keaveney, Attorney At Law Admitted NJ Bar*
*James DiMaggio, Attorney At Law Admitted PA and NJ Bar*
*Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar*

March 3, 2022

Hon. Magdeline D. Coleman
United States Bankruptcy Court
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 202
Courtroom No. 8
Philadelphia, PA 19107

**In Re: Robert J. Blackburn; Chapter 13 Bk. No.: 17-11878 – MDC**
**Debtor's Response to US Bank, NA Legal Title Trustee for Truman 2016 SC6 Title Trust's**
**Response to Chapter 13 Trustee's Final Report filed on February 17, 2022**

Honorable Magdeline D. Coleman:

Please accept this response in lieu of a more formal response to US Bank, NA as Legal

Title Trustee for Truman 2016 SC6 Title Trust's (herein "Creditor") Response to Chapter 13

Trustee's Final Report filed on February 17, 2022.

Paragraphs 7 and 8 of Creditor's response state:

> 7.    In anticipation of the bankruptcy being completed, a review of the account
> revealed that when the original proof of claim was filed, it omitted $6,072.84 in pre-petition
> escrow deficiency for costs incurred due to the Debtor's default under the note and mortgage.

> 8.    Accordingly, the Debtor's mortgage account is delinquent in the total amount of
> $6,072.84.

Respectfully, the Debtor requests an order deeming his account with Creditor to be

current post-petition with the above referenced escrow deficiency being deemed discharged

*New Jersey Office: 1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
*Phone: 800-219-0939    Fax: 856-282-1090*

*Pennsylvania Office: 1650 Market Street, Suite 3600, Philadelphia, PA 19103 ***
*Phone: 800-219-0931  Fax: 215-995-6773*
*** By appointment only*

www.KeaveneyLegalGroup.com

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**



*James P. Keaveney, Attorney At Law Admitted NJ Bar*
*James DiMaggio, Attorney At Law Admitted PA and NJ Bar*
*Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar*

*Client Focused. Integrity Driven.*

and/or cancelled. To rule otherwise, will rob the Debtor of the fresh start that he is due after completing his Chapter 13 plan payments and subsequent discharge.

The Debtor filed his Chapter 13 case and Chapter 13 plan on March 17, 2017. The creditor filed their proof of claim on May 16, 2017, indicating arrears in the amount of $12,010.54, with $00.00 listed for escrow deficiency:

Amount necessary to cure any default as of the date of the petition: $ _____ 12,010.54

| Part 3: Arrearage as of Date of the Petition | |
| --- | --- |
| Principal & interest due: | $10,427.04 |
| Prepetition fees due: | $1,583.50 |
| Escrow deficiency for funds advanced: | $0.00 |
| Projected escrow shortage: | $0.07 |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $12,010.54 |
| | |

The Debtor filed a modified Chapter 13 plan on December 13, 2017, which proposed to pay the Creditor's proof of claim in full:

*New Jersey Office: 1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
*Phone: 800-219-0939   Fax: 856-282-1090*

*Pennsylvania Office: 1650 Market Street, Suite 3600, Philadelphia, PA 19103 ***
*Phone: 800-219-0931   Fax: 215-995-6773*
*** By appointment only*

www.KeaveneyLegalGroup.com

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**

**KEAVENEY**
LEGAL GROUP

*Client Focused. Integrity Driven.*

*James P. Keaveney, Attorney At Law Admitted NJ Bar*
*James DiMaggio, Attorney At Law Admitted PA and NJ Bar*
*Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar*

| Creditor | Description of Secured Property and Address, if real property | Regular Monthly Payment to be paid directly to creditor by Debtor | Estimated Arrearage | Interest Rate on Arrearage, if applicable | Amount to be Paid to Creditor by the Trustee |
|---|---|---|---|---|---|
| Capital One Auto Finance | 2007 Toyota Camry | $341.00 | $705.00 | | $705.00 |
| Rushmore Loan Mgmt Services | 1433 Grovania Ave., Abington, PA 19001 | $890.00 | $ 12,010.54 | | $12,010.54 |

The Debtor's plan was subsequently confirmed by order of the court on March 8, 2018. The Debtor completed his plan payments and discharge was entered on January 27, 2022.

Several cases in the third circuit discuss when amending a proof of claim is appropriate. Where the claim amendment is filed after the bar date has passed, it will only be timely if it relates back to the date of the original claim. This relation back will not be permitted if the amendment actually states a new claim. In re MK Lombard Group I, Ltd., 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003).

A claim "amendment" will be deemed to actually be a "new" claim if the original claim fails to give the debtor "fair notice of the conduct, transaction, or occurrence" from which the amended claim arises. Lombard, 301 B.R. at 817 (quoting In re Owens, 67 B.R. 418, 423 (Bankr. E.D. Pa. 1986)). However, if the amendment simply cures a defect in the original claim, sets it forth in more detail, pleads a new theory of recovery on the same facts, or increases damages, it will not constitute a new claim and relation back may be allowed. In re Ben Franklin Hotel Assocs., 186 F.3d 301, 309 (3d Cir. 1999); Lombard, 301 B.R. at 817.

*New Jersey Office: 1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
*Phone: 800-219-0939   Fax: 856-282-1090*

*Pennsylvania Office: 1650 Market Street, Suite 3600, Philadelphia, PA 19103 ***
*Phone: 800-219-0931  Fax: 215-995-6773*
*** By appointment only*

www.KeaveneyLegalGroup.com

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**

**KEAVENEY**
LEGAL GROUP

*Client Focused. Integrity Driven.*

*James P. Keaveney, Attorney At Law Admitted NJ Bar*
*James DiMaggio, Attorney At Law Admitted PA and NJ Bar*
*Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar*

In Lombard, the court allowed the Mortgage lender to amend their proof of claims in holding:

> "In truth, the sole extent of prejudice Debtor alleges she will suffer is that she will have to repay her arrearage prior to the end of the Plan. She claims that the lack of notice has shortened the time period in which she can pay. However, as detailed above, the Debtor had adequate notice and so was not prejudiced by any delay. As to having to pay the full arrearage to complete the Plan, this is asking no more than what is required by the Bankruptcy Code and does not rise to the level of undue prejudice." Id. at 13.

The clear distinction in the current matter before the court is that the Creditor is not attempting to modify their proof of claim, but rather Creditor is seeking determination from the court that the Debtor is still in arrears due to Creditor's own mistake in failing to add a pre-petition escrow deficiency. Thus, the Debtor would be severely prejudiced if the court determined these amounts to be owed as the Debtor was not afforded proper notice, or even given an opportunity to cure the escrow deficiency, due to Creditor's admitted mistake.

Persuasive authority for a case with a similar fact pattern was decided in In re Hadfeg, 585 B.R. 208, 210–14 (Bankr. S.D. Fla. May 1, 2018) (Mark) (Citing United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (Mar. 23, 2010), and § 1327(a), where a confirmed plan that stated condo association's prepetition arrearage was $5,000 to be paid in full precluded association from collecting additional $33,480 prepetition arrearage it claimed four years later. The Association did not object to confirmation and did not file proof of claim. The Association first questioned amount of prepetition arrears when order was entered at end of case declaring association payments current. Id. at 210. The court held that the

*New Jersey Office: 1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
*Phone: 800-219-0939   Fax: 856-282-1090*

*Pennsylvania Office: 1650 Market Street, Suite 3600, Philadelphia, PA 19103 **
*Phone: 800-219-0931   Fax: 215-995-6773*
* By appointment only

www.KeaveneyLegalGroup.com

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**

**KEAVENEY**
LEGAL GROUP

*Client Focused. Integrity Driven.*

*James P. Keaveney, Attorney At Law Admitted NJ Bar*
*James DiMaggio, Attorney At Law Admitted PA and NJ Bar*
*Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar*

Association cannot collect the prepetition arrearage it claims from the debtor, from the property or from a subsequent purchaser of the property because the debt has been preclusively paid in full pursuant to the confirmed plan and that the Debtor satisfied her prepetition debt in full. Id. at 211-212.

Unlike the creditor in In re Hadfeg, the Creditor in the current case did file a proof of claim.  The Creditor's proof of claim was paid in full pursuant to the Debtor's confirmed plan. As such, like in In re Hadfeg, the Debtor asks the court for determination that Debtor has satisfied his pre-petition debt in full.

In conclusion, based on the foregoing, the Debtor respectfully requests an order deeming his account with Creditor to be current post-petition with the above referenced escrow deficiency being deemed discharged and/or cancelled.

Respectfully Submitted,


Dated:  March 3, 2021                                    /s/ James DiMaggio
                                                        James DiMaggio, Esquire

*New Jersey Office: 1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
*Phone: 800-219-0939    Fax: 856-282-1090*

*Pennsylvania Office: 1650 Market Street, Suite 3600, Philadelphia, PA 19103 ***
*Phone: 800-219-0931  Fax: 215-995-6773*
*** By appointment only**

www.KeaveneyLegalGroup.com

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**

# KEAVENEY
## LEGAL GROUP

*Client Focused. Integrity Driven.*

**James P. Keaveney, Attorney At Law Admitted NJ Bar**
**James DiMaggio, Attorney At Law Admitted PA and NJ Bar**
**Thomas Masciocchi, Attorney At Law Admitted PA and NJ Bar**

**New Jersey Office:** *1000 Maplewood Drive, Suite 202, Maple Shade, NJ 08052*
**Phone:** *800-219-0939*    **Fax:** *856-282-1090*

**Pennsylvania Office:** *1650 Market Street, Suite 3600, Philadelphia, PA 19103* *
**Phone:** *800-219-0931*   **Fax:** *215-995-6773*
** By appointment only**

[www.KeaveneyLegalGroup.com](http://www.KeaveneyLegalGroup.com)

**Protecting Homeowners Rights in Foreclosure Defense and Bankruptcy**



**User Name:** Katy Whidden
**Date and Time:** Thursday, March 3, 2022 1:39:00 PM EST
**Job Number:** 165713736

## Document (1)

1. *In re MK Lombard Group I, Ltd., 301 B.R. 812*

   **Client/Matter:** jdimaggio

   **Search Terms:** 301 B.R. 812

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | Court: Federal > Fed. Circuit |

 Positive

As of: March 3, 2022 6:39 PM Z

# *In re MK Lombard Group I, Ltd.*

United States Bankruptcy Court for the Eastern District of Pennsylvania

December 4, 2003, Decided

CHAPTER 11, BANKRUPTCY NO. 02-36936 SR

**Reporter**

301 B.R. 812 *; 2003 Bankr. LEXIS 1809 **; 51 Collier Bankr. Cas. 2d (MB) 1094

IN RE MK LOMBARD GROUP I, LTD, DEBTOR

**Disposition:** [**1] Objection to claims sustained

## Core Terms

proof of claim, relates back, amend, excusable neglect, claimant, deadline, bankruptcy judge

## Case Summary

### Procedural Posture

Debtor objected to two proofs of claim filed by a condominium association.

### Overview

The association filed a proof of claim that failed to set forth the claim and attach any writings on which the claim was based, as required under *Fed. R. Bankr. P. 3001*. The association filed a second proof of claim, which was untimely filed, that intended to correct the defects in the first proof of claim. The court held that the first proof of claim was invalid. The court held that there was no claim that the second proof of claim could amend and that the second claim had to stand on its own. The court further held that the record did not show that the second proof of claim was late because of excusable neglect. The court held that, as a result, the association's claim was disallowed.

### Outcome

The court sustained the objection as to both claims.

## LexisNexis® Headnotes

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

### *HN1*[⬇] Proof of Claim, Effects & Procedures

For an unsecured claim to be allowed, the unsecured creditor must file a proof of claim. *Fed. R. Bankr. P. 3002(a)*.

Bankruptcy Law > Claims > Proof of Claim > Content, Evidence & Form

### *HN2*[⬇] Proof of Claim, Content, Evidence & Form

*Fed. R. Bankr. P. 3001* sets out the required contents of a proof of claim. By making reference to the appropriate official form, *Rule 3001* provides a description of a proof of claim. The proof must be in writing; set forth the creditor's claim; be executed by the creditor or an authorized agent; and attach writings on which a claim

is based.

Bankruptcy Law > Procedural Matters > Adversary Proceedings > Commencement of Adversary Proceedings

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

Bankruptcy Law > Procedural Matters > General Overview

*HN3*[⬇] **Adversary Proceedings, Commencement of Adversary Proceedings**

*Fed. R. Bankr. P. 7015* incorporates *Fed. R. Civ. P. 15*.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

*HN4*[⬇] **Amendment of Pleadings, Leave of Court**

See *Fed. R. Civ. P. 15(a)*.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Relation Back

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

*HN5*[⬇] **Amendment of Pleadings, Relation Back**

See *Fed. R. Civ. P. 15(c)*.

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Relation Back

Governments > Legislation > Statute of Limitations > Time Limitations

*HN6*[⬇] **Proof of Claim, Effects & Procedures**

The decision to grant or deny a post-bar date amendment to a timely filed claim rests within the sound discretion of the bankruptcy judge. To be permitted, the amendment must relate back to the initial filing if filed after the bar date; otherwise, it will be deemed a "new" claim and will not be permitted.

Bankruptcy Law > Claims > Proof of Claim > Content, Evidence & Form

Bankruptcy Law > ... > Bankruptcy > Case Administration > Notice

Bankruptcy Law > ... > Bankruptcy > Claims > Allowance of Claims

*HN7*[⬇] **Proof of Claim, Content, Evidence & Form**

If the initial proof does not give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment then the amendment asserts new claims and will not be allowed. On the other hand, amendments that merely cure defects in the previously-filed claim, describe the claim in more detail, plead new theories of recovery on the same facts presented in the initial claim, or increase damages do not constitute new claims.

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

Governments > Legislation > Statute of Limitations > Time Limitations

Governments > Legislation > Statute of Limitations > General Overview

### *HN8*[ ]  Proof of Claim, Effects & Procedures

The bar date is critically important to the administration of a successful chapter 11 case for it intended to be a mechanism providing the debtor and its creditors with finality. In particular, a bar date order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. Therefore, a bar date order does not function merely as a procedural gauntlet, but as an integral part of the reorganization process. Accordingly, a bar date is likened to a statute of limitations which generally must be strictly observed.

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

### *HN9*[ ]  Proof of Claim, Effects & Procedures

*Fed. R. Bankr. P. 9006(b)(1)* provides that a bankruptcy court in its discretion may accept a late-filed proof of claim where a claimant establishes "excusable neglect." The burden is on the claimant to prove that he or she did not timely file the claim because of excusable neglect.

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

### *HN10*[ ]  Proof of Claim, Effects & Procedures

Whether a claimant's neglect of a deadline for filing a proof of claim is excusable is an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. These equitable considerations include (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

**Counsel:** Donald F. Walton, TRUSTEE.

Frederic J Baker, TRUSTEE.

**Judges:** Stephen Raslavich, United States Bankruptcy Judge.

**Opinion by:** Stephen Raslavich

## Opinion

[*814]  By: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

### Introduction

Before the Court is the Objection of Philip Lombard Street, LP to the Proofs of Claim Nos. 31 and 66 of the Abbotts Square Condominium Association. A hearing on the Objection was held on November 6, 2003, at which the parties were given the opportunity to present evidence and make oral argument. Thereafter, the matter was taken under advisement. For the reasons set forth below, the Objection to both claims is sustained.

### Factual Background

The Condominium Association has filed two Proofs of Claim in this case. The first (# 31) was filed prior to the

bar date, in an unliquidated amount and without a description of the claim or supporting documentation. The second (# 66) was filed after the bar date purporting to amend the deficiencies of the first.

Philip Lombard Street LP [1] (PLS) has objected to the allowance of both claims. **[\*815]** As to the first claim, PLS argues that it is not self-sustaining in that it **[\*\*2]** fails to provide any information about the claim. Objection, P13. The challenge to the second is based on the invalidity of the first: because the second claim is untimely, it can be allowed only if it relates back to the facts supporting the first claim. But as the first claim lacks a cognizable basis for recovery, PLS concludes, there is nothing that the second claim can relate back to. *Id.*, P14.

For its part, the Association relies on the generally accepted principle that amendments are liberally allowed. Response, P14. Where, as here, the second claim merely corrects ambiguities in the first claim, the second relates back to the first to be deemed timely filed. *Id.*, P15.

## Analysis

As PLS' challenge to both claims is based upon the invalidity of the first claim, an analysis of the requirement for filing a claim follows.

*HN1*[⬆️] For an unsecured claim to be allowed, the "unsecured creditor **[\*\*3]** … must file a proof of claim …." *B.R. 3002(a)*. [2] *HN2*[⬆️] Bankruptcy *Rule 3001* sets out the required contents of a proof of claim. 9 *Collier on Bankruptcy P 3001.01* (Matthew Bender 15th ed.

Revised). [3] A leading commentator has summarized the requirements as follows:

> By making reference to the appropriate official form, *Rule 3001* provides a description of a proof of claim. The proof must be in writing; set forth the creditor's claim; be executed by the creditor or an authorized agent; attach writings on which a claim … is based ?

*Collier, supra, id.* Does Claim # 31 conform to those requirements?

About all that can be said in favor of Claim # 31 is that it used the Official Form [4] and that it was signed by an authorized agent. *See B.R. 3001(b)*. Other than that, the claim is seriously deficient. First, **[\*\*4]** it fails to "set forth [the] … claim." *B.R.3001(a)*. In the box entitled *Basis for Claim* the Association has checked the box *Other* but has failed to provide an explanation on the blank line next to that word. Second, it fails to attach a "writing." In the box containing instructions with regard to accounting for credits, attaching supporting documentation, and requesting return copies, a claimant is instructed to attach copies of any supporting documentation or, if such paperwork is not available, then explain why he cant. [5] Nothing is attached to Claim # 31 -- no writing or an explanation for the lack of one. [6]

---

[3] The Bankruptcy Code provides no guidance concerning what the proof of claim must contain. 9 *Collier, supra.*

[4] The appropriate form is Official Form 10. *See* Official Bankruptcy Form, 10.

[5] In the case of voluminous documents, attaching a summary will suffice.

[6] And this is significant considering that Claim # 66 -- the purported amendment -- attached an engineer's report dated March 26, 2003 which explains what the claim is for. The date of the report is the same as the date Claim # 31 was filed.

---

[1] Under the confirmed plan, PLS has the power to review and object to claims. Amended Plan, Art. 7.5.

[2] The rule provides for some exceptions none of which apply here.

As it completely fails to inform, it is *proof* of nothing. How does the underlying invalidity of Claim # 31 affect the Association's ability to amend the claim after the bar date?

 [**5] Neither the Bankruptcy Code nor Rules expressly deals with amendments to claims. However, amendments to timely proofs of claim have been liberally allowed where the amendment would not work any prejudice or be otherwise inequitable. *See In re McMillan, 182 B.R. 11, 13 (Bankr. [*816] E.D.Pa. 1995).* Chief Bankruptcy Judge Fox of this Court has noted the two reasons offered for this:

[]Sometimes the rationale given for permitting claims to be amended is that bankruptcy courts are courts of equity. *In re Anderson-Walker Industries, Inc., 798 F.2d 1285 at 1287.* Other times, the amendment of a claim has been likened to an amendment of a pleading. *See Fidelity and Deposit Co. v. Fitzgerald, 272 F.2d 121, 129 n. 8, 130 n. 13 (10th Cir. 1959); cert. denied, 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960); 3 Collier P 57.*11, at 194-195; 2 Remington §§ 746-752. Not only have amendments been liberally permitted, these amendments may occur after the bar date and relate back to the initial filing which was timely. *Matter of Pizza of Hawaii, Inc., 761 F.2d 1374 (9th Cir.1985).*

*In re Ungar, 70 B.R. 519, 521 (Bankr.E.D.Pa. 1987).* [**6] The trend of the cases appear to apply *Rule 7015* to contested matters. *See In re Best Refrigerated Express, Inc., 192 B.R. 503, 506 (Bankr.D.Neb.1996)* (applying *Rule 7015* through *Rule 9014* to allow amendment to filed proof of claim to relate back); *Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.), 220 B.R. 312, 314 (E.D.La.1998)* (noting that "numerous courts have applied *Rule 7015* and *Rule 15(c)* explicitly or by analogy in non-adversary

[bankruptcy] proceedings"); *In re Brown, 159 B.R. 710, 714 (Bankr.D.N.J.1993)* (noting that *Rule 15*'s "standards for allowing amendments to pleadings in adversary proceedings … also apply to amendments to a proof of claim"); *In re Stavriotis, 977 F.2d 1202, 1204 (7th Cir.1992)* (noting that Bankruptcy *Rule 9014* permits extension of *Rule 7015* to contested matters); *In re Blue Diamond Coal Corp., 147 B.R. 720, 725 (Bankr.E.D.Tenn. 1992)*(extending *Rule 9014* to apply *Rule 7015* to contested matters); *In re Enron Corp. 298 B.R. 513, 521-522 (Bankr.S.D.N.Y. 2003)* (invoking *Rule 9014* to apply *Rule 7015*);10 *Collier on Bankruptcy P 7015.02* n. [**7] 1. (Matthew Bender 15th ed. Revised).

Following this trend, the Court will apply *Rule 7015* -- through invocation of *Rule 9014(c)* [7] -- to this Objection. HN3[↑] That Bankruptcy Rule incorporates *Federal Rule of Civil Procedure 15* which provides, in pertinent:

(a) HN4[↑] Amendments. [Any time after responsive pleading is served or more than 20 days after service of pleading] a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires….

(c) HN5[↑] Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

….

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading….

*F.R.C.P. 15(a), (c).*

---

[7] That rule provides that Court may at any stage in a particular contested matter direct that one or more of the rules in Part VII not already applicable be made applicable. *B.R. 9014(c).*

Case 17-11878-mdc    Doc 86    Filed 03/03/22    Entered 03/03/22 14:26:26    Desc Main
Document      Page 13 of 24
301 B.R. 812, *816; 2003 Bankr. LEXIS 1809, **7

Page 6 of 8

**[\*\*8]**  *HN6*[↑] The decision to grant or deny a post-bar date amendment to a timely filed claim rests within the sound discretion of the bankruptcy judge. *In re Hill, 286 B.R. 612, 621 (Bankr.E.D.Pa. 2002)*. To be permitted, the amendment must relate back to the initial filing if filed after the bar date; otherwise, it will be deemed a "new" claim and will not be permitted. *In re [\*817] Metro Transportation Co., 117 B.R. 143, 147 (Bankr.E.D.Pa. 1990)*; *In re McMillan, supra, 182 B.R. at 14*; *In re Ben Franklin Hotel Associates, 1998 U.S. Dist. LEXIS 2304, 1998 WL 94808 \*3 (E.D.Pa.)* aff'd *186 F.3d 301 (1999)*; *In re Pennsylvania Truck Lines, Inc., 189 B.R. 331, 335 (Bankr.E.D.Pa. 1995)*; *In re Hanscom Foods, Inc., 96 B.R. 33, 35 (Bankr.E.D.Pa. 1988)*. [8]

**[\*\*9]** *Does Claim # 66 Amend What is Alleged in Claim # 31 or is it an Altogether New Claim?*

To determine if Claim # 66 amends a Claim # 31, the Court must first analyze the substance of the first claim. *HN7*[↑] If the initial proof did not "give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment" then the amendment asserts new claims and will not be allowed. *In re Owens, 67 B.R. 418, 423 (Bankr.E.D.Pa. 1986)* (*quoting In re Westgate-California Corp., 621 F.2d 983, 984 (9th Cir. 1980))*. On the other hand, amendments that merely cure defects in the previously-filed claim, describe the claim in more detail, plead new theories of recovery on the same facts presented in the initial claim, or increase damages do not constitute new claims. *In re Hemingway Transport, Inc., 954 F.2d 1, 10 (1st Cir.1992)*; *In re International Horizons, Inc., 751 F.2d*

---

[8] Some courts also require that the equities of the case must weigh in favor of the amendment. *See Enron, supra, 298 B.R. at 520-21*; *In re Lee Way Holding Company, Inc., 178 B.R. 976, 979 (Bankr.S.D.Ohio 1995)*.

*1213, 1216 (11th Cir. 1985)*.

Claim # 31 gives not even an iota of information regarding what it is about. It lacks a statement as to its basis or for that matter or why it is silent on that point. And the fact that it **[\*\*10]** states the amount due as unliquidated scarcely helps as that part, too, appears without explanation. In short, Claim # 31 is a nullity and will be disallowed.

If that is the case, then there is simply nothing for Claim # 66 to amend: it does not cure defects as nothing has been alleged. Similarly, no new theory is plead on old facts because no facts were previously alleged. Finally, there is no increase in the amount of damages because the amount was originally stated as unliquidated. Simply stated, Claim # 66 is a "new" claim and the extent to which it will be allowed must be determined independently of any other claim.

*The Untimeliness of Claim # 66*

PLS requests disallowance of Claim # 66 because it was filed after the claims deadline. Objection, P14. Bankruptcy *Rule 3003(c)(3)* sets forth the procedure for establishing bar dates for proofs of claim in Chapter 11 cases. The importance of the bar date in this context was recognized recently in a prominent bankruptcy case:

*HN8*[↑] The bar date is critically important to the administration of a successful chapter 11 case for it intended "to be a mechanism providing the debtor and its creditors with finality." *In re Mandible Forest Products Corp., 89 B.R. 358, 374 (Bankr.S.D.N.Y.1988).* **[\*\*11]** In particular, a "'bar [date] order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and

Case 17-11878-mdc   Doc 86   Filed 03/03/22   Entered 03/03/22 14:26:26   Desc Main
Document      Page 14 of 24

Page 7 of 8

301 B.R. 812, *817; 2003 Bankr. LEXIS 1809, **11

the general amount of the claims, a necessary step in achieving the goal of successful reorganization.'" *In re Keene Corp., 188 B.R. 903, 907 (Bankr.S.D.N.Y.1995)* (quoting *First Fidelity Bank, N.A. v. Hooker Ines., Inc. (In re Hooker Ines., Inc.), 937 F.2d 833, 840 (2d Cir.1991))*. Therefore, a bar **[*818]** date order "does not 'function merely as a procedural gauntlet,' … but as an integral part of the reorganization process." *Id.* (quoting *First Fidelity, 937 F.2d at 840* (quoting, in turn, *United States v. Kolstad (In re Kolstad), 928 F.2d 171, 173 (5th Cir.1991)))*. Accordingly, a bar date is likened to a statute of limitations which generally must be strictly observed. *Id.* (citing *Maxwell Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff (In re Macmillan), 186 B.R. 35, 49 (Bankr.S.D.N.Y.1995))*.

*Enron, supra, 298 B.R. at 520*. In this case, such **[**12]** a deadline was originally set for March 28, 2003, and then extended to May 9. *See* Docket # # 53, 123. There is no dispute that Claim # 66 was filed on August 25, 2003, well after the deadline.

*Notwithstanding Its Lateness, Can Claim # 66 Be Deemed Timely?*

Although the Association does not raise the issue, PLS maintains that the record does not reflect that the Association's tardiness was the result of excusable neglect. Objection, P14. Bankruptcy *Rule 9006(b)(1)* **HN9[↑]**] provides that a bankruptcy court in its discretion may accept a late-filed proof of claim where a claimant establishes "excusable neglect." B.R. 9006(b)(1). The burden is on the claimant to prove that he or she did not timely file the claim because of excusable neglect. *See Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir.2000)*; *In re Spring Ford Industries, Inc., 2003 Bankr. LEXIS 882, 2003 WL 21785960 *2 (Bankr.E.D.Pa.)*.

The seminal case interpreting the "excusable neglect" language of Bankruptcy *Rule 9006(b)(1)* is *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)*. In permitting a creditor's late filing under Bankruptcy *Rule [**13] 9006(b)(1)*, the Supreme Court explained that Congress, "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *507 U.S. at 388, 113 S.Ct. at 1495* (quoting, in part, Bankruptcy *Rule 9006(b)(1)*). The Supreme Court further clarified that **HN10[↑]**] whether a claimant's neglect of a deadline is excusable is an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. *See id. at 395, 113 S.Ct. at 1498*. These equitable considerations include (1) "the danger of prejudice to the debtor," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Id.*

With *Pioneer's* four equitable factors in mind, the Court turns to the facts of this case to determine which way they preponderate. **[**14]** But the record here is sparse; the evidence consists of the two claims and nothing else. And the filed claims themselves bear on but one factor: the reason for the delay and whether it was in the claimant's control. Claim # 66 demonstrates that the Association had the requisite documentation to support its claim as of March 26, 2003, almost six (6) weeks prior to the claims bar date. On this score, then, the record demonstrates only that the Association had *no* good reason for its delay because it was in

possession of the necessary information with ample time to meet the deadline. Accordingly, even had the Association raised the issue, the record does not show that Claim # 66 was late because of excusable neglect.

[*819] *The Effect of Untimeliness On the Association's Right to Recover in this Bankruptcy*

Having found that Claim # 66 is untimely, does that require disallowance of the claim? The Amended Plan provides for payment of five classes of claims. Four of the classes consist of either secured or priority claims. The Association's claim is neither secured nor priority. That leaves the fifth class (Class 5) which consists of Allowed Unsecured Claims. If the Association is [**15] to receive any payment on its claim, it must qualify for this class. [9]

The Amended Plan defines an Allowed Unsecured Claim as "all or that portion of any Unsecured Claim that is or has become an Allowed Claim." *See* Amended Plan, Art. 1.1.11. An Allowed Claim is defined as "a Claim Against the Debtor, to the extent that a Proof of claim (i) was *timely filed* with the Court and no objection to the Claim is filed within the time fixed by the Court or this Plan for such objections …" *Id.* Art: 1.1.5. [10] (emphasis added). Because Claim # 66 was filed after the deadline and is the subject of an objection, it will be disallowed.

[**16] Summary

The Objection will be sustained as to both claims. Claim # 31 is prima facie invalid. Claim # 66 is an untimely, new claim which cannot relate back to amend # 31. The late filing of Claim # 66 cannot otherwise be excused under *Rule 9006(b)(1)*.

An appropriate order follows.

By the Court:

Stephen Raslavich

United States Bankruptcy Judge

Dated: December 4, 2003

## ORDER

AND NOW upon consideration of the Objection of Philip Lombard Street, LP, to the Proofs of Claim Nos. 31 and 66 of the Abbotts Square Condominium Association, the Response of the Association thereto, after a hearing held on November 6, 2003, and for the reasons set forth in the attached Opinion, it is hereby

ORDERED that the Objection is sustained as to both claims. Accordingly, Claim Nos. 31 and 66 are disallowed.

By the Court:

STEPHEN RASLAVICH,

United States Bankruptcy Judge

Dated: December 4, 2003

---

[9] Significantly, the Amended Plan proposes to pay such claims in full. *See* Plan, Art. 4.6.

[10] There are two other criteria for qualification as an Allowed Claim -- deemed allowance pursuant to *§ 1111(a)* or by operation of plan confirmation -- but the Association's claims meet neither of those two.

End of Document



**User Name:** Katy Whidden
**Date and Time:** Thursday, March 3, 2022 1:37:00 PM EST
**Job Number:** 165713567

## Document (1)

1. *In re Hadfeg, 585 B.R. 208*
   **Client/Matter:** jdimaggio
   **Search Terms:** 585 B.R. 208, 210–14
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | Court: Federal > Fed. Circuit |

LexisNexis | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2022 LexisNexis

Katy Whidden

 Neutral

As of: March 3, 2022 6:37 PM Z

# *In re Hadfeg*

United States Bankruptcy Court for the Southern District of Florida

April 30, 2018, Decided

CASE NO. 12-26304-RAM, CHAPTER 13

**Reporter**

585 B.R. 208 *; 2018 Bankr. LEXIS 1296 **; 27 Fla. L. Weekly Fed. B 208

In re: LILIANA MARIA HADFEG, Debtor.

## Core Terms

confirmation, prepetition, arrearage, postpetition, condominium, obligations, Deeming, special assessment, monthly payment, regular, Notice, condominium unit, rights, personam, cure, rem, condominium association, final judgment

## Case Summary

### Overview

HOLDINGS: [1]-Although a condominium association did not lose its lien rights by failing to file a proof of claim, the order confirming the plan was res judicata as to the amount of debt secured by the lien; [2]-Entry of the confirmation order bound the association to the prepetition arrearage provisions of the plan, including the amount of the arrearage and the payment terms, pursuant to *11 U.S.C.S. § 1327(a)*; [3]-Upon completion of the plan, there was no prepetition debt, *11 U.S.C.S. § 1328(a)*, and neither the in rem rights of the association nor its rights under Florida's Condominium laws to enforce debts against subsequent purchasers revived a fully-paid and extinguished prepetition debt; [4]-However, as the plan did not include payment of

postpetiton special assessments, the association's rights to enforce those obligations was not extinguished.

### Outcome

The court vacated the order deeming debtor current and granted the debtor's motion to compel in part.

## LexisNexis® Headnotes

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

**HN1** Proof of Claim, Effects & Procedures

Secured creditors do not have to file a proof of claim or object to confirmation of a plan for their security interests to survive a debtor's bankruptcy. In fact, amended *Fed. R. Bankr. P. 3002(a)* clarifies that a lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim.

Bankruptcy Law > ... > Plans > Plan Confirmation > Effects of Confirmation

**HN2** Plan Confirmation, Effects of Confirmation

An order confirming a Chapter 13 plan is res judicata on

Case 17-11878-mdc    Doc 86    Filed 03/03/22    Entered 03/03/22 14:26:26    Desc Main
Document      Page 18 of 24

Page 2 of 8
585 B.R. 208, *208; 2018 Bankr. LEXIS 1296, **1296

the amount of debt secured by the lien. Once a plan is confirmed, it is res judicata to all issues that were or could have been brought prior to confirmation.

Real Property Law > Common Interest
Communities > Homeowners Associations

*HN3*[⬇]] **Common Interest Communities, Homeowners Associations**

*Fla. Stat. § 720.3085(2)(b)* states that a parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that come due up to the time of transfer of title.

Bankruptcy
Law > ... > Bankruptcy > Claims > Allowance of Claims

Real Property Law > Common Interest
Communities > Homeowners Associations

Bankruptcy Law > ... > Plans > Plan
Confirmation > Effects of Confirmation

Bankruptcy Law > Procedural Matters > Contested Matters

Bankruptcy Law > Procedural Matters > Adversary Proceedings > Causes of Action

*HN4*[⬇]] **Claims, Allowance of Claims**

While a bankruptcy court cannot eliminate a condominium association's statutory enforcement rights, it can determine with finality the amounts that are owed and enforceable. There are a number of ways in which a bankruptcy court makes such determinations, including contested matters in the main bankruptcy case involving the allowance of a claim under *11 U.S.C.S. §§ 502* and

*506*, or adversary proceedings to determine the validity, priority, or extent of a lien under *Fed. R. Bankr. P. 7001*. The court's determination can occur through the Chapter 13 plan confirmation process. A confirmation order, to which the condominium association did not and does not object, is equivalent to a state court default final judgment.

Bankruptcy Law > ... > Plans > Plan
Confirmation > Effects of Confirmation

*HN5*[⬇]] **Plan Confirmation, Effects of Confirmation**

The policy favoring finality of confirmation orders is strong. The policy is so strong that in Espinosa, the United States Supreme Court declined to grant relief from an order confirming a Chapter 13 plan that contained a discharge provision flagrantly at odds with the proscriptions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Despite finding that confirmation of the plan was legal error, the Supreme Court held that the confirmation order remains enforceable and binding on the creditor because the creditor had notice of the error and failed to object or timely appeal.

Bankruptcy Law > Claims > Proof of
Claim > Content, Evidence & Form

Real Property Law > Common Interest
Communities > Homeowners Associations

Bankruptcy Law > Claims > Proof of Claim > Effects & Procedures

*HN6*[⬇]] **Proof of Claim, Content, Evidence & Form**

Bankr. S.D. Fla. R. 3070-1(B)(1) expands the scope of secured creditors subject of the filing requirements of

*Fed. R. Bankr. P. 3002.1(b)* to include condominium associations with liens on real property other than a debtor's principal residence.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN7*[ ] **Procedural Due Process, Scope of Protection**

Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

**Counsel:** **[\*\*1]** For Trustee: Nancy K. Neidich, Miramar, FL.

**Judges:** Robert A. Mark, United States Bankruptcy Judge.

**Opinion by:** Robert A. Mark

# Opinion

**[\*209]  ORDER (1) VACATING ORDER DEEMING DEBTOR CURRENT; AND (2) DETERMINING SCOPE OF PRECLUSIVE EFFECT OF PLAN**

The Debtor in this chapter 13 case has completed plan payments under a 60-month plan. The plan provides for a cure of prepetition debt owed to her condominium association and for regular monthly payments of her association fees. The questions addressed in this Order arise from an order deeming the debtor current on all obligations due the association.

The motion before the Court is Aquarius by the Sea-A Condominium, Inc.'s (the "Association") Expedited

Motion for Relief (the "Motion") [DE #148]. In the Motion, the Association seeks relief from a Court order [DE #126] that, as amended, provides that "[t]he Debtor is current on all her payments due to the Association . . . including any special assessment payments through July of 2017." [DE #143, p.2] (the "Order Deeming Debtor Current").

The Association has not challenged or moved for relief from the Order Confirming Chapter 13 Plan [DE #72] (the "Confirmation Order"). *See* Motion [DE #148, p.6]. Rather, it simply seeks relief from the **[\*\*2]** Order Deeming Debtor Current.

Because of procedural deficiencies, the Court is vacating the Order Deeming Debtor Current. The Court also is finding that the Debtor's chapter 13 plan has determined, with finality, the Debtor's prepetition liability to the Association and precludes the Association from enforcing any alleged additional prepetition claims against the Debtor or against any subsequent owner of her condominium units. Finally, this Order finds that the plan did not extinguish the Debtor's obligation to pay post-petition special assessments that were not provided for in her plan.

Background

The debtor, Liliana Hadfeg (the "Debtor"), confirmed a Chapter 13 plan commonly referred to as a "cure and maintain" plan. In the plan, the Debtor listed the amount of the prepetition arrearage she **[\*210]** believed she owed to the Association. The plan provides for monthly payments to cure that arrearage over the life of the plan and provides for payment of the regular Association payments each month.

The plan confirmed in this case, the Debtor's 2nd Amended Plan [DE #63] (the "Plan"), contains the following treatment of prepetition and postpetition

obligations to the Association:

Secured Creditors: [Retain Liens pursuant to 11 USC § 1325 (a)(5)] Mortgage(s)/Liens on Real or Personal Property:

| | | | | |
|---|---|---|---|---|
| 1. | Aquarius By the Sea-A Condo, Inc | Arrearage on Petition Date | $ 2,500.00 | |
| | c/o Eqramul I Chowdhury, R.A. 3850 Bird Road, PH Coral Gables, FL | | | |
| Address: | 33146 | Arrears Payment $ | 41.67 /month | (Months 1 to 60 ) |
| | | | 250.00 /month | (Months 1 to 8 ) |
| Account No: | Unit 403 | Regular Payment $ | 285.00 /month | (Months 9 to 60 ) |
| 2. | 1 Aquarius By the Sea-A Condo, Inc | Arrearage on Petition Date | $ 2,500.00 | |
| | c/o Eqramul I Chowdhury, R.A. 3850 Bird Road, PH Coral Gables, FL | | | |
| Address: | 33146 | Arrears Payment $ | 41.67 /month | (Months 1 to 60 ) |
| | | | 250.00 /month | (Months 1 to 8 ) |
| Account No: | Unit 404 | Regular Payment $ | 285.00 /month | (Months 9 to 60 ) |

The Association did **[\*\*3]** not object to confirmation of the Plan, which was confirmed on April 19, 2013 [DE #72]. Nor has the Association filed a proof of claim in this case. The Association first apprised the Debtor and this Court of its objection to the Debtor's "cure and maintain" Plan with the filing of its Motion on October 18, 2017, more than four (4) years after plan confirmation, and after the Debtor completed her payments under the Plan. *See* Chapter 13 Trustee's Notice of Plan Completion [DE# 165].

### Prepetition Arrearages: Preclusive Effect of a Plan and Confirmation Order

In the Motion, the Association argues that the amount of the prepetition arrearage treated by the Debtor in her Plan ($5,000) is less than the actual prepetition debt, which it alleges is $38,480. However, the Association is not seeking to enforce the Debtor's *in personam* liability for the $33,480 difference. The Association's position is that "prepetition fees are discharged as to any personal liability of the debtor, but that the underlying lien remains." [DE #148, p.4]. In short, the Association is challenging the Debtor's ability to fix the Association's *in rem* claim against the condominium units for prepetition arrearages at the **[\*\*4]** amount of the prepetition arrearage set forth in the Plan.

The Court rejects the Association's argument that its

alleged prepetition arrearage claim remains enforceable despite its failure to file a proof of claim or object to the Association correctly argues that, generally, cured creditors do not have to file a proof of object to confirmation of a plan for their security survive a debtor's bankruptcy. In fact, *Fed. R. Bankr. P. 3002(a)* clarifies that "[a] cures a claim against the debtor is not void the failure of any entity to file a proof of claim." But that principle does not affect the result here.

The Association did not lose its lien rights by failing to file a claim, but *HN2* ] the order confirming the Plan is *res judicata* on the amount of debt secured by the lien. *See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010)* (a confirmation order is a final judgment); *see also In re Berrouet, [\*211] 469 B.R. 393 (Bankr. N.D. Ga. 2012)* ("'[O]nce a plan is confirmed, it is *res judicata* to all issues that were or could have been brought prior to confirmation.'" (quoting *In re Cruz, 253 B.R. 638, 641 (Bankr. D.N.J. 2000)*); *In re Franklin, 448 B.R. 744 (Bankr. M.D. La. 2011)* (mortgage creditor bound by prepetition arrearage listed in the confirmed plan when it failed to file a timely proof of claim asserting a larger arrearage).

The Association argues alternatively **[\*\*5]** that a debtor cannot modify a Florida condominium association's covenant running with the land. In two bankruptcy court decisions from this district, *In re Tellez-Sain, Case No. 13-13325-BKC-LMI, 2013 Bankr. LEXIS 4564, 2013 WL 5852496 (Bankr. S. D. Fla. Oct. 30, 2013)*, and *In re Gonzales, Case No. 07-14968-BKC-AJC, 2010 Bankr. LEXIS 1292, 2010 WL 1571172 (Bankr. S.D. Fla. April 20, 2010)*, the courts reasoned that property rights, even in bankruptcy, are governed by state law, and the *Florida Condominium Act* specifies that, upon the sale of a condominium, pre-sale debts owing to the

Case 17-11878-mdc    Doc 86    Filed 03/03/22    Entered 03/03/22 14:26:26    Desc Main
Document      Page 21 of 24

Page 5 of 8

585 B.R. 208, *211; 2018 Bankr. LEXIS 1296, **5

condominium association become the *in personam* obligations of the new owners and continue to be *in rem* encumbrances on the condominium. *See* HN3[↑] *Fla. Stat. § 720.3085(2)(b)* ("A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that come due up to the time of transfer of title").

As Judge Isicoff explained in *Tellez-Sain*,

> no matter what the Debtors accomplish in their bankruptcy with respect to their liability for the assessments, nothing under applicable bankruptcy or non-bankruptcy law can impact a subsequent owner's *in personam* liability for the unpaid assessments. The Florida Statutes, as well as each of the Declarations, unequivocally provide that a subsequent purchaser is liable for unpaid assessments of the prior owner. That independent statutory **[**6]** liability is secured by a lien on that subsequent owner's interest in the parcel or condominium at issue.

*In re Tellez-Sain, 2013 Bankr. LEXIS 4564 at *8* (footnotes omitted).

The Association's reliance on the Florida Condominium Act is misplaced. The Act gives rise to a statutory encumbrance for <u>unpaid</u> assessments. All of the cases cited by the Association, including those cited in the Association's supplemental filing [DE #159],[1] are factually distinguishable because they involve debtors who indisputably are not fully paying their prepetition

---

[1] *See In re Montalvo, 546 B.R. 880 (Bankr. M.D. Fla. 2016)* (debtor surrendered his interest in condominiums); Transcript of July 12, 2012 hearing before Judge Kimball in *In re Canales*, Case No. 11-25976-BKC-EPK, DE #54 (chapter 7 case reopened for purposes of adding condominium association as an omitted creditor).

arrearages in a plan.

*Tellez-Sain* and *Gonzales*, for example, are "strip off" cases. In a "strip off" case, by obtaining a valuation of the property that is less than the senior mortgage debt, the debtor is "stripping off" the condominium association's secured claim and reclassifying the claim as an unsecured claim. In virtually all "strip off" plans, the debtor pays only a small percentage of the unsecured claim.

The Debtor in this case has satisfied her prepetition debt in full. Entry of the Confirmation Order bound the Association to the prepetition arrearage provisions of the Plan, including the amount of the arrearage and the payment terms. *11 U.S.C. § 1327(a)*. Upon completion of the Plan, there **[**7]** is no prepetition debt, *11 U.S.C. § 1328(a)*, and neither the *in rem* rights of the Association nor its rights under Florida's Condominium laws to enforce **[*212]** debts against subsequent purchasers revives a fully-paid and extinguished prepetition debt.

Removing bankruptcy from the equation reveals the Association's untenable position. For example, assume that the Debtor had filed a state court action seeking a declaratory judgment that she owed the Association $5,000 on July 3, 2012 (the petition date), and a default final judgment was entered against the Association. Without question, the Association's *in personam* claim against the Debtor and *in rem* claim against the condominium units would be fixed at $5,000. Unless the default judgment was set aside, the Association would have no basis to argue that the difference between the amount it contended was due from the Debtor and the amount set forth in the default final judgment would somehow survive.

Bankruptcy does not alter this analysis. HN4[↑] While a bankruptcy court cannot eliminate a condominium

association's statutory enforcement rights, it can determine with finality the amounts that are owed and enforceable. There are a number of ways in which a bankruptcy court **[\*\*8]** makes such determinations, including contested matters in the main bankruptcy case involving the allowance of a claim under *11 U.S.C. §§ 502* and *506*, or adversary proceedings to determine the validity, priority, or extent of a lien under *Fed. R. Bankr. P. 7001*. In this case, the Court's determination occurred through the plan confirmation process. The Confirmation Order, to which the Association did not and does not object, is equivalent to a state court default final judgment. *See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010)* (explicitly holding that a bankruptcy court's confirmation order is a final judgment).

*HN5*[⬆] The policy favoring finality of confirmation orders is strong. *In re Fili, 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001)* (holding "[p]lan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality" and collecting cases in support of that proposition). The policy is so strong that in *Espinosa*, the Supreme Court declined to grant relief from an order confirming a chapter 13 plan that contained a discharge provision flagrantly at odds with the proscriptions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Despite finding that confirmation of the plan was "legal error," the Supreme Court held that the confirmation order "remains enforceable and binding **[\*\*9]** on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." *Espinosa at 275*. As simply stated by the Supreme Court, "*Rule 60(b)(4)* does not provide a license for litigants to sleep on their rights." *Id.*; *see also Fili at 374* ("A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk.").

In sum, the Association's *in rem* claim against the condominium units for the alleged balance due on account of prepetition arrearages ($33,480), and *in personam* claim against potential future owners of the condominiums for the same balance ($33,480), are no longer enforceable. The prepetition debt was determined with finality in the confirmed Plan and paid in full.

## Postpetition Arrearages: Insufficient Notice and Lack of Due Process

The Debtor's postpetition obligations are a different story. The Debtor's Motion to Compel [the Association] to Deem Condominium Association Payments Current (the "Motion to Compel") [DE #118] is a two-page, four-paragraph, five-sentence **[\*213]** pleading. In it, and of relevance, the Debtor states as follows:

Aquarius by the Sea-A Condominium, Inc. is the Debtor's homeowner's association, and the Debtor's arrearage **[\*\*10]** and regular monthly payments are being paid through the Debtor's confirmed Second Amended Chapter 13 Plan, [ECF 63].

All payments under the Debtor's confirmed Second Amended Chapter 13 Plan have been made and no Notice of Payment Change has been filed with this Court.

WHEREFORE, the Debtor requests this Honorable Court to enter an Order compelling Aquarius by the Sea-A Condominium, Inc. to deem the condominium association current and any other relief this Court deems proper under the circumstances.

The Debtor makes no mention of special assessments anywhere in her Motion to Compel or in the Plan. The real dispute regarding postpetition obligations in this case is not whether the Debtor is current on her "regular monthly payments," but whether her Plan cured

amounts due for items other than regular monthly payments ("Other Charges"), like special assessments, and whether those Other Charges assessed postpetition, which by the Debtor's own admission are not treated in the Plan, are current.

Whether the Association, due to allegedly improper service, received proper notice of the Debtor's Motion to Compel and the hearing set thereon is irrelevant. The Debtor's request for relief is ambiguous, **[**11]** a problem apparent in, and further muddied by, the Debtor's subsequent submission of two orders granting the Motion to Compel.

The first order [DE #126] reads as follows:

> The [Motion to Compel] is GRANTED.
> The Debtor is current on her association payments to [the Association] through July of 2017.

The second order [DE #143] amends the first and reads as follows:

> The [Motion to Compel] is GRANTED.
> The Debtor is current on all her payments due to [the Association], including any special assessment payments through July of 2017.

Without question, the full extent of the relief requested by the Debtor was ambiguous. The Motion to Compel specifies that, with regards to postpetition obligations, the Debtor is paying only her regular monthly payments through the Plan. *See* Motion to Compel ("The Debtor's arrearage and regular monthly payments are being paid through [the Plan.]" (emphasis added)). The Debtor stated further that she is current with her Plan payments. What about Other Charges assessed postpetition that were not treated in the Plan?

The Court rejects the Debtor's argument that the Association's failure to file a Notice of Payment Change is tantamount to a representation that out-of-Plan **[**12]**

payments are current.[2] Other Charges are not the type of "contractual installment payments" subject of *Fed. R. Bankr. P. 3002.1*, or this Court's local rule.

In this case, the Debtor's intent to extinguish the Association's secured claim for Other Charges assessed postpetition was not apparent in the Motion to Compel. Submitting an "amended" order that for the first time incorporates the words "special assessment" is not due process. *See Espinosa at 272* (*HN7*[⬆]) "Due **[*214]** process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1905))*.

In sum, the Association is entitled to relief from the Order Deeming Debtor Current and a finding that the Other Charges assessed postpetition remain outstanding claims enforceable against the Debtor and, under Florida law, enforceable against subsequent purchasers if the condominium units are sold.

## Conclusion

The special rights of Florida condominium associations to collect association fees and assessments do not trump the preclusive effect of a "cure" plan confirmed without objection, particularly where, as here, the creditor did not file a proof of claim or challenge **[**13]** its treatment under the plan until after payment in full under a five-year plan. Conversely, a plan that does not

---

[2] *HN6*[⬆]] This Court's Local Rules (L.R. 3070-1(B)(1)) expand the scope of secured creditors subject of the filing requirements of *Fed. R. Bankr. P. 3002.1(b)* to include condominium associations with liens on real property other than the debtor's principal residence.

585 B.R. 208, *214; 2018 Bankr. LEXIS 1296, **13

include payment of postpetition special assessments does not extinguish an association's rights to enforce those obligations.

Therefore, it is -

**ORDERED** as follows:

1. The Association's Motion is Granted.

2. The Order Deeming Debtor Current is vacated.

3. The Motion to Compel is granted in part as set forth below.

4. When the Debtor obtains her discharge now that she has completed her Plan, the Association will have no *in rem* claim against the condominium units, and no *in personam* claim against potential future owners of the condominium units, on account of alleged prepetition arrearages not provided for in the Plan.

5. As to postpetition obligations, the only amounts deemed satisfied by the Plan are the $285.00 regular monthly payments that became due postpetition and were paid under the Plan. All other postpetition obligations, including special assessments, remain enforceable against the Debtor and any subsequent purchaser of her units and remain a lien on the units.

**ORDERED in the Southern District of Florida on April 30, 2018**.

/s/ Robert A. Mark

**Robert A. Mark, Judge**

**United States [**14] Bankruptcy Court**

---

End of Document